IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
GLORIA A. HILL,                    )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )      Case No. 06-1371-WEB
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of                    )
Social Security,                   )
                                   )
                    Defendant.     )
_____)
```

RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

---

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On August 29, 2006, administrative law judge (ALJ) William

H. Rima III issued his decision (R. at 14-32).  Plaintiff alleges
disability beginning July 1, 2004 (R. at 14).  At step one, the
ALJ found that plaintiff has not engaged in substantial gainful
activity since July 1, 2004, the alleged onset date (R. at 16).
At step two, the ALJ found that plaintiff had the following
severe impairments: degenerative disc disease of the cervical and
lumbar spine, a depressive disorder NOS, rule out substance abuse
disorder, and rule out personality disorder with antisocial
features (R. at 16-21).  At step two, the ALJ further determined
that the following impairments were not deemed severe: carpal
tunnel syndrome, stroke or cerebral vascular accident, mental
retardation, a shoulder disorder, and hypertension (R. at 22).
At step three, the ALJ determined that plaintiff's impairments do
not meet or equal a listed impairment (R. at 22-24).  After
establishing plaintiff's RFC (R. at 24-25), the ALJ determined at
step four that plaintiff can perform past relevant work as a
customer service representative (R. at 31-32).  Therefore, the
ALJ concluded that plaintiff was not disabled (R. at 32).

**III.  Did the ALJ err by failing to include the entire
administrative record?**

In a social security disability case, the court has the duty
to meticulously examine the record and determine on the record as
a whole whether the Commissioner's factual findings are supported
by substantial evidence and whether the Commissioner applied

correct legal standards.  Pace v. Shalala, 893 F. Supp. 19, 20
(D. Kan. 1995).  The entire administrative record is a necessary
part of appellant's record on appeal.  This area of law is fact-
specific and our standard of review is deferential to the
Commissioner; therefore, the complete administrative record is
required whether appellant argues that the findings are not
supported by substantial evidence or that incorrect legal
standards were applied.  Goatcher v. United States Dep't of
Health & Human Services, 52 F.3d 288, 289 (10th Cir. 1995).  A
court has the authority to remand a case for further
consideration if unable to exercise meaningful or informed
judicial review because of an inadequate administrative record.
Harrison v. PPG Industries, Inc., 446 U.S. 578, 594, 100 S. Ct.
1889, 1898, 64 L. Ed.2d 525 (1980).  The administrative record
must permit meaningful judicial review.  Therefore, if the
missing documents are immaterial to the ALJ's decision, or not
relied on in his opinion, a remand would not be warranted.  Brady
v. Apfel, 41 F. Supp.2d 659, 668 (E.D. Tex. 1999).  However, when
the ALJ's findings were derived from the information that the
Commissioner failed to include in the record, the court cannot
conduct the meticulous examination of the record required by law.
See Pace, 893 F. Supp. at 21.

    In the case of Booker v. Massanari, Case No. 00-1141-WEB (D.
Kan., recommendation and report, Sept. 25, 2001, adopted by

6

district court, Oct. 22, 2001), the ALJ's findings were based on information contained in two exhibits.  However, only portions of one exhibit were contained in the record, while no part of the other exhibit was contained in the record.  The court held that because the ALJ relied on documents not contained in the record in making his findings, and they were therefore material to the ALJ decision, the case was remanded for further hearing (Booker, report and recommendation at 8-11).

In the case of Rogge v. Barnhart, Case No. 01-1383-WEB (D. Kan. recommendation and report, Nov. 27, 2002, adopted by district court Jan. 13, 2003), MRI results relied on by the ALJ and material to his decision were not contained in the record. Therefore, the court held that it could not conduct the meticulous examination of the record to determine if the MRI test results supported the findings of the Commissioner, or if they supported the findings of Dr. Hart, whose opinions the ALJ had discounted (Dr. Hart had opined that plaintiff's spinal disorder prevented the plaintiff from working).  The case was therefore remanded due to this and other errors in the case (Rogge, report and recommendation at 6-9).

In the case of Johnson v. Barnhart, Case No. 03-1115-JTM (D. Kan. recommendation and report, April 30, 2004, adopted by district court, May 24, 2004), missing from the record was an RFC assessment setting forth claimant's mental limitations.  This

7

assessment was relied on by the ALJ when questioning the
vocational expert (VE); furthermore, the ALJ's RFC findings
matched the limitations that the VE indicated were on the
assessment.  The record was silent as to the source of that
assessment.  The court held that the missing document was clearly
material to the ALJ's decision.  The court also held that without
a copy of that document or any information as to the source of
that document, the court could not conduct the meticulous
examination of the record required by law.  Therefore, the case
was remanded for further hearing (Johnson, Doc. 16 at 8-9).

In the case of Burton v. Barnhart, Case No. 06-1051-JTM,
2006 WL 4045937 (D. Kan. recommendation and report, Oct. 13,
2006, adopted by district court, Nov. 1, 2006), the ALJ
determined that the 1st state agency assessment was entitled to
no weight.  However, the court found that it was impossible to
exercise meaningful or informed judicial review of the weight
that the ALJ gave to a medical opinion because 4 of the 8 pages
are missing from the assessment.  Therefore, the court held that
the case would be remanded in order for the ALJ to obtain the
missing pages of the assessment.  2006 WL 4045937 at *5 (Burton,
Doc. 12 at 11).

In the case presently before the court (Hill), the ALJ gave
"substantial weight" to the opinions of the state agency medical
consultants (R. at 30-31) when establishing plaintiff's RFC,

8

including Exhibit 11F, a physical residual functional capacity

assessment (R. at 30, 250-256).  The ALJ stated that the

consultants "provided specific reasons for their opinions," and

that their opinions were "grounded in the evidence of record,

including careful consideration of the objective medical evidence

and the claimant's allegations regarding symptoms and

limitations" (R. at 30).

Exhibit 11F, as contained in the record, includes 7 pages

(R. at 250-256).  On page 7 of the document, it indicates that

there is an 8th page (R. at 256).  However, no page 8 appears in

the record, and R. at 257 is missing.  Taking judicial notice of

the physical RFC form used in this case, the court referenced

this same form contained in Money v. Astrue, Case No. 06-1348

(Money, R. at 251-258).  The 8th page of the assessment form in

Money has space for "Additional Comments" and includes the

signature and date of the medical consultant's report (Money, R.

at 258).  That last page of the assessment is missing in the case

presently before the court (Hill).  Thus, the court does not have

before it the complete assessment, including additional comments

by the consultant, if any, or the name or signature of the

consultant and the date of the consultant's report.  As was the

case in Burton, the court does not have before it all the pages

of the assessment that the ALJ relied on in this case in making

his RFC findings.  Therefore, this case will need to be remanded

in order for the ALJ to include in the record the missing page of
the assessment (Exh. 11F) so that the court can engage in
meaningful judicial review.

The record in this case also contains the medical records
from Via Christi Rehabilitation Center (R. at 303-333, Exh. 20F).
The ALJ repeatedly referenced portions of this exhibit in his
decision (R. at 26, 27, 31).  However, this exhibit is missing R.
at 318, 320, 322, 324, 326, 328, 330 and 332.  The ALJ indicated
that "the physical therapist who administered the FCE [functional
capacity evaluation] reported that the claimant self limited in
almost all categories, consistently exaggerated her pain, and did
not give full effort" (R. at 27, citing exhibit 20F/147-149,
157).  The ALJ later cited to this document in finding that
"despite self limiting behavior, the claimant demonstrated no
difficulty using her hands or fingering during the FCE (exhibit
20F/148) showing that she has no manipulative or handling
limitations" (R. at 31).  In both cases, the ALJ's citation
includes a specific reference to page 148 of exhibit 20F, which
he relied on in making his decision.  However, page 148, or R. at
320 is not included in the record.[2]  Given that the
administrative record must permit meaningful judicial review, and

_____

[2]The record includes R. at 319 (marked as page 149 on the
bottom of the page) and R. at 321 (marked as page 147 on the
bottom of the page).  However, the record does not contain page
148, or R. at 320.

10

that the ALJ's findings were derived from information which the Commissioner failed to include in the record, the court cannot conduct the meticulous examination of the record required by law. Therefore, the case should be remanded in order for the defendant to include in the record complete copies of Exhibits 11F and 20F.

**IV.  Did the ALJ err in his analysis of the opinions of Dr. Seifert?**

Plaintiff was referred by rehabilitation services to a licensed psychologist, Dr. Seifert, for a psychological assessment (R. at 18).  In his decision, the ALJ stated the following concerning the opinions of Dr. Seifert:

> **Dr. Seifert stated that he did not believe that the claimant was employable considering her impaired intelligence and severe mental illness.** He noted that the claimant did not know the colors of the American flag, past presidents, or the shape of a ball (exhibit 5F). Dr. Seifert also noted that the claimant was will[ing] to take psychotropic medication, which she later demonstrated an unwillingness to do, at least as prescribed. The claimant told Dr. Seifert that she did not attend special education classes and had a C average in school. Dr. Seifert noted that the claimant's distant memory was only mildly impaired, but the claimant was often vague and unclear (exhibit 5F/24). Dr. Seifert is not a treating source. During the evaluation with Dr. Moeller, the claimant was able to state the colors of the flag and name past presidents. Furthermore, the claimant has shown an unwillingness to take psychotropic medication as prescribed or pursue counseling. **Dr. Seifert administered IQ testing, which was admittedly invalid, but did not give MMPI testing to assess the**

> **validity of the claimant's subjective
> reports. Dr. Seifert's opinion appears to be
> based almost entirely on the claimant's
> subjective statements and evaluation
> performance, which have been consistently
> shown to be not credible, and therefore is
> not entitled to substantial weight.  The
> undersigned has given greater weight to the
> opinion of Dr. Moeller, because this opinion
> takes into consideration MMPI-2 testing and a
> comprehensive review of the record, and is
> thus based upon evidence not available to Dr.
> Seifert.**

(R. at 28-29, emphasis added).

In his psychological evaluation, Dr. Seifert indicated that

he performed a number of tests, including the MMPI-2 (R. at 187).

His report then states the following:

> Personality Assessment--**There was a massive
> elevation on the F Validity Scale of the
> MMPI-2 which can variously factor in limited
> intelligence, self-depreciation, and
> distorted reality. We have to interpret
> results cautiously considering her impaired
> intelligence, but the global indicators are
> fairly consistent with the history.** On the
> clinical side, there were massive elevations,
> in descending order, on paranoia,
> schizophrenia, depression, hypochondriasis,
> psychopathic deviancy, psychasthenia, and
> hysteria; social introversion was moderately
> elevated. The K Validity Scale was very low
> and indicates that defenses are inoperable
> and not containing surplus stress and
> anxiety. **Her own report is consistent with
> the MMPI-2 elevations (reality loss,
> paranoia, depression, a history of antisocial
> behavior, broken relationships, obsessive
> thinking, and preoccupation with physical
> ailments).** The diagnostic impression,
> Schizoaffective Disorder, is offered for
> consideration. This diagnosis includes Major

Depression and Schizophrenia.

(R. at 190, emphasis added).  Thus, the court finds that the ALJ

decision incorrectly asserted that Dr. Seifert did not give MMPI

testing to assess the validity of plaintiff's subjective reports.

Dr. Seifert administered to plaintiff an MMPI-2 test; he found

that the global indicators were "fairly consistent with the

history" (R. at 190), and also found that plaintiff's own report

"is consistent with the MMPI-2 elevations (reality loss,

paranoia, depression, a history of antisocial behavior, broken

relationships, obsessive thinking, and preoccupation with

physical ailments)" (R. at 190).  Thus, Dr. Seifert did not rely

almost entirely on plaintiff's subjective statements, but

performed MMPI testing and found plaintiff's reports and history

were consistent with the MMPI testing.  The court finds that the

ALJ erred by relying on erroneous representations of Dr.

Seifert's report to discount the opinions of Dr. Seifert.

Therefore, this case shall be remanded in order for the ALJ to

give proper consideration to the report of Dr. Seifert, including

his interpretation of the MMPI-2 testing of the plaintiff.

Defendant, in their brief, indicate that the ALJ, at the

hearing, stated that Dr. Seifert, a doctor of education,

administered an MMPI-2 test and interpreted the results, but that

he is not qualified to do so (Doc. 10 at 19); according to the

ALJ, it takes a PhD psychologist to administer MMPI-2 testing (R.

13

at 364).  First, this statement at the hearing does not negate the fact that the ALJ decision relied on inaccurate or erroneous representations of Dr. Seifert's report; i.e., that Dr. Seifert did not give MMPI testing to assess the validity of plaintiff's subjective reports.

Second, various sources indicate that the ALJ incorrectly asserted that Dr. Seifert was not qualified to administer and interpret an MMPI-2 test because he did not have a PhD in psychology.  Dr. Seifert's report indicates that he has a doctorate in education, that he has a specialty certification in psychology (ABPP, American Board of Professional Psychologists, www.abpp.org, Sept. 27, 2007), and that he is a licensed psychologist (R. at 191, 187).  The Health Psychology and Rehabilitation website states the following about who is qualified to purchase an MMPI-2 exam: "Licensed psychologist or graduate degree in psychology and psychometric training" (http://www.healthpsych.com/testing/testing.html, Sept. 27, 2007).  A second source indicates that the MMPI should be "administered, scored and interpreted by a clinical professional trained in its use, preferably a psychologist or psychiatrist" (http://www.healthatoz.com/healthatoz/Atoz/common/standard/transform.jsp?requestURI=/healthatoz/Atoz/ency/psychological_tests.jsp, Sept. 27, 2007).  A third source states that the MMPI should be administered, scored, and interpreted by a professional,

14

preferably a clinical psychologist or psychiatrist, who has received specific training in MMPI use (http://psychology.about.com/od/psychologicaltesting/a/mmpi.htm, Sept. 27, 2007).  The undisputed evidence in this case is that Dr. Seifert is a licensed psychologist and has a speciality certification with the American Board of Professional Psychologists (ABPP), and there is no evidence in the record that Dr. Seifert is not trained in the use of the MMPI test.  The ALJ, contrary to the various sources cited above and without any citation to authority, stated that Dr. Seifert is not qualified to administer and interpret an MMPI-2 test because he does not have a PhD in psychology.  In the absence of any authority for his assertion, and in light of the authority cited above, the court finds that the ALJ's assertion that Dr. Seifert is not qualified to administer or interpret an MMPI-2 test does not provide a reasonable or valid basis to discount the opinions of Dr. Seifert.

**V.  Did the ALJ err in his analysis of the opinions of Dr. Brewer, plaintiff's treating physician?**

In his decision, the ALJ stated the following concerning a "Statement of Medical Condition" contained in the record:

> **Roslyn Welch, PA-C, completed a form for State assistance on December 27,2004 reporting that the claimant's major depression with psychotic features and ADHD were severe and persistent and not**

**controllable by medication or other treatment.** Ms. Welch stated that these impairments caused functional limitations precluding competitive employment and requiring ongoing psychiatric or psychological treatment. **She stated that the claimant had extremely poor concentration and attention span, persistent fatigue and sadness, paranoia, and ideas of reference** and was unable live independently. **She stated that the claimant needed, but could not afford, home nursing for medication management. Another signature page with Dr. Brewer's signature dated November 19,2004 was also submitted. It is unclear which medical source completed this statement. Ms. Welch is not an acceptable medical source as defined by the regulations and her opinion is not entitled to controlling weight.** The evidence shows that the claimant has never consistently taken psychotropic medication as prescribed to determine its effectiveness and was not referred for therapy due to her lack of confidence in the system. The claimant is able to maintain an independent living arrangement. She stated that her boyfriend manages her medication and she discontinued home health services (exhibit 17F/126). **There is no evidence that the claimant requires home nursing care in order to take medication. These statements are not supported by the medical records from Comcare and thus have not been given controlling weight. They are not supported by the overall medical evidence and thus not given substantial weight.**

(R. at 29, emphasis added).

First, defendant has failed to properly organize the medical record in this case.  The record contains two "Statements of Medical Condition" (R. at 211-217, 218-224).  Both statements indicate that there are 8 pages to each statement.  The way the

record is organized, no page 8 appears after the 1st Statement of
Medical Condition (R. at 211-217), but two page 8s appear after
the 2nd Statement of Medical Condition (R. at 218-224, 225, 226).
Both page 8s have the signature of the person preparing the
report (R. at 225, 226).  Thus, in referencing the 2nd Statement
of Medical Condition (R. at 218-224) at R. at 29 (quoted above),
the ALJ indicated in his decision that two signature pages appear
after it, that of Ms. Welch (R. at 225), and that of Dr. Brewer
(R. at 226).

The 1st Statement of Medical Condition is signed and dated
by the plaintiff on December 27, 2004 (R. at 212).  The signature
of Ms. Welch is also dated December 27, 2004 (R. at 225).  The
2nd statement of Medical Condition is signed and dated by the
plaintiff on November 19, 2004 (R. at 219).  The signature of Dr.
Brewer is also dated November 19, 2004 (R. at 226).  Thus, it
appears that the defendant misplaced the signature page of the
1st Statement of Medical Condition, causing confusion to the ALJ
and to the court.  It appears that Ms. Welch prepared the 1st
Statement of Medical Condition, which relates to plaintiff's
physical limitations (R. at 211-217, 225),[3] and that Dr. Brewer
prepared the 2nd Statement of Medical Condition, which relates to
plaintiff's mental limitations (R. at 218-224, 226), and which is

---

[3]The ALJ, at R. at 30, discusses the 1st Statement of Medical
Condition, stating that it is unsigned.  However, it appears that
this Statement was in fact signed by Ms. Welch.

17

discussed by the ALJ at R. at 29, quoted above.   Thus, the
analysis by the ALJ concerning both Statements is clearly marred
by the confusion in the record concerning the source of each
Statement.

Second, the ALJ found that the statements made in the 2nd
Statement of Medical Condition "are not supported by the medical
records from COMCARE" (R. at 29), and thus were not given
controlling or substantial weight.   However, this finding by the
ALJ is not supported by the evidence in this case.   For example,
Dr. Brewer indicated in the 2nd Statement that plaintiff suffers
from extremely poor concentration and attention span, paranoia
and ideas of reference (R. at 224).   The records from COMCARE,
signed by Dr. Brewer, indicate the following:

> May 27, 2004: OBJECTIVE DATA:...Concentration
> was poor...(R. at 198)
>
> Sept. 23, 2004: OBJECTIVE DATA:
> ...Concentration was poor... (R. at 196)
>
> Nov. 19, 2004: OBJECTIVE DATA:...At this
> point, there is some indication of some
> paranoid type thinking which she describes as
> feeling like she's watched a lot and feeling
> like people are pointing at her out to get
> her.   Concentration remains extremely poor
> and it takes her three or four minutes to
> come with the date and she just doesn't track
> well and only seems to take in about half of
> what is said to her...(R. at 194)
>
> Jan. 13, 2005: OBJECTIVE DATA:...She does
> acknowledge some paranoid delusions and
> feeling like people are talking behind her
> back and spying on her.   Concentration
> remains pretty poor, perhaps a little better

18

than last visit but she generally doesn't
track very well and only seems to take in
about half of what is said to her...she is
definitely showing cognitive limitations...
(R. at 296)

July 28, 2005: OBJECTIVE DATE:...She does
acknowledge that she continues to be paranoid
a lot with some persecutory delusions and
ideas of reference.  Concentration remains
very poor and she doesn't track very well and
seems very forgetful and has to be reminded
of things and comprehension remains somewhat
diminished...these cognitive limitations have
been pretty persistent and about the same
presentation with all the visits that I have
had with her for the last year or so... (R.
at 293)

Nov. 18, 2005: OBJECTIVE DATA: Remarkable for
restricted affect and poor concentration (R.
at 290).

The court finds that Dr. Brewer's opinions in the 2nd Statement

that plaintiff suffers from extremely poor concentration and

attention span, paranoia and ideas of reference are amply

supported by his own treatment notes for 2004 and 2005.

Dr. Brewer, in the 2nd Statement of Medical Condition,

asserted that "Patient needs home health nursing to manage her

medications at home, but has no insurance" (R. at 224).  The ALJ

stated that there "is no evidence that the claimant requires home

nursing care in order to take medication" (R. at 29).  However,

the COMCARE records signed by Dr. Brewer on Nov. 19, 2004 (the

same day he signed the 2nd Statement of Medical Condition)

indicated that he was trying to keep her medication regimen

simple, and had written instructions out on a piece of paper and

that, hopefully, with the help of her granddaughter, plaintiff
would be able to take the medication as prescribed.  Dr. Brewer
then stated that: "I told her I would be glad to refer her to
home health nursing to help her manage her medications at home if
she is able to obtain Medicaid" (R. at 194).  On January 13,
2005, Dr. Brewer indicted that plaintiff would be referred to
Home Health Nursing to help her manage her medications at home
now that she has Medicaid (R. at 296).  On July 28, 2005, Dr.
Brewer's treatment notes indicate that plaintiff had been off her
medications for several months and that compliance with
medications had been very difficult for her, in part because she
is ambivalent about taking her medications but also because she
is so low functioning and has trouble remembering to take her
medications consistently (R. at 292).  Thus, the evidence from
Dr. Brewer's treatment records provides clear evidence that
plaintiff requires home nursing care to take medication.

     The ALJ also asserts that the statements in the 2nd
Statement of Medical Condition by Dr. Brewer are not supported by
the overall medical evidence.  However, the evaluation by Dr.
Seifert, states that plaintiff has "considerable problems with
concentrating and attending and I have already noted a deficiency
in her distant memory" (R. at 190).  As noted above, Dr. Brewer
repeatedly noted plaintiff's extremely poor concentration and
attention span.  Dr. Seifert also opined that the prognosis for

successful vocational activity for the plaintiff was judged to be poor due to her mental impairments (R. at 191).  This is entirely consistent with the opinion of Dr. Brewer that plaintiff has severe and persistent mental illness, not controllable by medication or treatment, causing severe functional limitations precluding competitive employment (R. at 223).  Thus, on remand, the ALJ shall give proper consideration to the opinions expressed by Dr. Brewer and Dr. Seifert.  The ALJ shall also take into consideration the areas of agreement or consistency in the opinions of Drs. Brewer and Seifert when making a determination of the weight that should be accorded to their opinions.

**VI.  Did the ALJ err in various findings at steps two, three and four of the sequential evaluation process, including the RFC findings?**

The court will not address these issues in detail because a proper evaluation of the opinions of Dr. Seifert and Dr. Brewer, and the inclusion of the missing portions of Exhibits 11F and 20F could impact the analysis of many of these issues.  See <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, at step two, the plaintiff must keep in mind that she must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the

21

impairments do not prevent the claimant from engaging in substantial work activity.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Furthermore, plaintiff must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

In this case, there is a wide variety of opinions regarding plaintiff's mental and physical limitations.  In regards to plaintiff's physical limitations, although plaintiff argues that greater weight should have been given to the opinions of Drs. Smith, Stein and Wood (physicians whose opinions predate the alleged onset date),[4] Dr. Eyster, plaintiff's treating physician, stated on June 20, 2005 that plaintiff is released to work without any physical restrictions (R. at 267).  However, the ALJ

---

[4]It appears from the record that these physicians were primarily consulting/examining physicians, although the record indicates that Dr. Smith prescribed medication and physical therapy (R. at 175).  Plaintiff's brief describes Drs. Smith and Stein as "examining physicians" (Doc. 7 at 24).

found that due to plaintiff's back and neck pain, he found that plaintiff had some physical limitations (R. at 29), and adopted physical RFC findings consistent with those set forth by the state agency medical consultants (R. at 24-25, 30-31, 250-256. So long as there is evidence in the record to support the findings of the ALJ, the court cannot reweigh the evidence nor substitute its judgment for that of the agency. <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on October 1, 2007

                              s/John Thomas Reid
                              JOHN THOMAS REID
                              United States Magistrate Judge